This was an inquisition of a forcible entry and detainer commenced against the appellant, at the instance of Francis Gholson, before a justice of the peace.
The appellant stated in a petition for a certiorari, that in the winter of the year 1807 and the spring of 1808 he cleared and settled upon a certain tract of land lying in the county of Maury, which he claimed as a gift from his father, Jones Kendrick, who derived his title as assignee of an entry made by James Williams in the books of John Armstrong; that the same land is also claimed by one Dallum, who lately sued the petitioner in an action of *Page 475 
ejectment, and had been stopped from proceeding therein by an injunction; that one Francis Gholson, who lived on the land, claiming under a purchase from Dallum, but without any deed or lease, made complaint to John Lindsey, Esq., of a forcible entry and detainer made upon the land by the petitioner, who thereupon caused a jury to be summoned and an inquisition to be taken, which inquisition found the petitioner guilty of a forcible detainer; that the petitioner thereupon tendered to the justice a plea in writing denying his detaining the land with force, as stated in the inquisition, and the justice received the plea and issued his precept directing another jury to be summoned to try the traverse; that the petitioner is desirous the trial should be in the Superior Court of law, because he verily believes that the influence of Gholson and his connections, in relation to the title of the land, is so great as to prevent the petitioner from having a fair trial on the premises, before the justice; and that, moreover, he was advised by men of great learning, that doubts were entertained whether or not the statutes upon which the proceedings are grounded are in force in this State.
The petition for the certiorari was granted, and the case removed for trial to the late Superior Court for the district of Mero; and upon the abolition of that Court, the cause was transferred to the Circuit Court of Maury County. At the November term. 1810, of that Court, a motion was made to dismiss the certiorari, which motion finally proved successful.
Kendrick thereupon appealed to this Court.
Haywood, for the appellant, argued that the Circuit Court had manifestly erred in dismissing the certiorari. The ground assumed by the Circuit Court was, that a certiorari would not lie from the Superior Court to a justice of the peace, but that the party complaining should have first resorted to the Court of Pleas and Quarter Sessions. This notion is said to be bottomed upon the provision in the Constitution respecting writs of certiorari; but that, surely, does not warrant the inference which is *Page 476 
drawn. The Constitution does not contain any prohibitory expressions as to the powers of the superior courts to grant writs ofcertiorari; and this Court ought not, by mere implication to restrict the exercise of a jurisdiction so valuable to the citizens at large. The correct ground is, that the late superior courts had, and their substitutes, the circuit courts, now have, the same power to remove causes from all inferior jurisdictions which is possessed by the Court of King's Bench in England.
But a decisive objection to the dismissal of this certiorari is, that this is a criminal proceeding, and not at all embraced by the article in the Constitution relied on. The universal practice in England is to remove all criminal proceedings, by certiorari from an inferior jurisdiction to the Court of King's Bench, upon the mere application of the attorney-general; and the like is always done when application is made by the defendant, upon a proper case being set forth. The probability of not getting a fair trial, is surely a case strong enough.
Balch, solicitor-general, and Hayes, for the State, insisted that the Circuit Court acted correctly in dismissing the certiorari. The Constitution provides that "the judges of the superior courts shall have power, in all civil cases, to issue writs of certiorari, to remove any cause, or a transcript thereof, from any inferior court of record into the Superior Court, on sufficient cause, supported by an oath or affirmation. The judges or justices of the inferior courts of law shall have power, in all civil cases, to issue writs of certiorari, to remove any cause, or a transcript thereof, from any inferior jurisdiction into their court, on sufficient cause, supported by oath or affirmation." Art. 5, secs. 6 and 7. The proceeding by an inquisition of a forcible entry and detainer is not wholly a criminal proceeding, and therefore the Constitution applies to it. In all cases of certiorari, the correct mode of proceeding is probably laid down in Tenn. Rep. 61. From this *Page 477 
it would seem that in no case commenced before a justice of the peace, will the Superior Court grant a certiorari in the first instance, unless it clearly appears from the petition that from circumstances beyond the control of the party, an appeal to the Court of Pleas and Quarter Sessions had been prevented, and that from a like cause inability existed to procure a certiorari.
Gholson procured an inquisition of forcible entry and detainer to be taken before a justice of the peace, against the appellant, who petitioned a judge for a writ of certiorari, alleging that he had tendered a plea in writing traversing the force, and that owing to Gholson's influence he could not have a fair trial in the county where the land lay. The certiorari was granted, and when the proceedings were removed to the Circuit Court the petition was, by the judgment of that Court, dismissed.
The questions here are, whether the Circuit Court had power to grant the writ directed to a justice of the peace, and, if it had such power, whether the petition shows a sufficient cause for its exercise.
The clauses in our Constitution relative to writs of certiorari are confined to civil cases, and have no application to the one before us.
By the common law, the Court of King's Bench, whose province it is to supervise the proceedings of inferior tribunals, could have issued this writ. Our Superior Courts were the only ones of a general and superintending jurisdiction, and are supposed to have had a similar power in such a case. The Act of 1794, ch. 1, sec. 1, expressly recognizes this writ as one by which criminal cases may be removed from inferior jurisdictions. The Circuit Courts possess the same powers which the Superior Courts possessed in cases like the present.
It therefore seems to us that the power to issue this writ existed, and that the probability of an unfair or insufficient trial in the county made a proper case for the exercise of that power. 1 Bac. *Page 478 
Abr. 349, 350; 2 Bur. 1040; 2 Com. Dig. tit. Certiorari, A. 1; 4 Dal. 213, 214; Acts of 1794, chap. 1, sec. 52; 2 Bac. Abr. tit. For. En. Det.
The judgment of the Circuit Court must, therefore, be reversed.